## WESTERN PAINT & CHEMICAL CO. v. BOARD OF COUNTY COM'RS OF KINGFISHER COUNTY.

No. 24215.    June 18, 1935.

R. F. Shutler and E. M. Bradley, for plaintiff in error.

V. D. Firestone, for defendant in error.

PER CURIAM. This action was filed in the district court of Kingfisher county by the Western Paint & Chemical Company, a corporation, to recover $704.48, with interest, from the board of county commissioners of Kingfisher county.

The plaintiff in error appeared as plaintiff below, and the defendant in error appeared as defendant. They will be referred to as they appeared in the lower court.

The plaintiff's petition is divided into four separate causes of action. It is alleged that on October 3, 1927, the plaintiff entered into four separate contracts with the defendant for the purchase of certain lumber for use in Kingfisher county. The character of the lumber, and the value, is set out in each contract. The four contracts are attached as exhibits to the plaintiff's petition. Plaintiff alleges that it carried out the terms of the contracts and delivered the lumber to the board of county commissioners; that the lumber was accepted and used by the county. Plaintiff then alleges that it presented and filed with the county clerk sworn claims as provided by law; that at the regular meeting of the board of county commissioners the claims were denied, and thereupon this suit was instituted. The county appeared and filed an answer in the nature of a general denial, and also pleaded the statute of limitations. A hearing was had before the trial court without the intervention of a jury, and at the conclusion of the testimony the court entered a judgment for the defendant. From that judgment the plaintiff brings the cause here for the purpose of reversing the action of the trial court.

It appears that some time prior to October 3, 1927, the date of the contracts, the plaintiff sold a carload of lumber to the board of county commissioners of Kingfisher county. The lumber was delivered to the defendant, but they refused to accept it for the reason that the lumber did not come up to specifications and was not the kind of lumber ordered by the county commissioners. When the defendant refused to accept the lumber, it appears that the plaintiff authorized the county engineer to unload the lumber at Kingfisher, and that at some future date he would come up and dispose of the lumber to the county. The plaintiff states that thereafter, and on October 3d, he went up to Kingfisher, and while the board of county commissioners was in session at the courthouse, he entered into the four contracts in question; that after the contracts were entered into the county then took the lumber and used it.

It is admitted that all of the four contracts sued upon were signed by the county commissioners, but two of the county commissioners testified that the contracts sued upon were signed in Oklahoma City at the office of the plaintiff company. The third commissioner testified that the contracts were signed at the railroad station in Kingfisher. They all denied that the contracts were signed at the courthouse while the county commissioners were in session. The records of the county commissioners, as kept by the county clerk, were introduced in evidence. The records disclose that the county commissioners were in session on October 3, 1927, but no mention is made of the contracts sued upon. On June 27th, a few days prior to the end of the fiscal year for 1927-28, the contracts were presented and payment refused. The county clerk's records do not show that the claims were ever filed with him; however, there is evidence to the effect that they were not filed upon advice of the county attorney.

Section 7647, O. S. 1931, provides that the board of county commissioners shall meet at certain designated places.

Section 7647, O. S. 1931, provides that the board of county commissioners shall meet and hold their session for the transaction of business in the county clerk's office at the county seat.

Section 7654, O. S. 1931, provides that the county commissioners shall keep a record of all orders and decisions made by them except those relating to roads and bridges.

Section 7655, O. S. 1931, provides that the county commissioners shall keep a book for the entry of all proceedings and adjudications relating to bridges, and the establishment, change, and discontinuance of roads.

In the case of Western Paint & Chemical Co., v. Board of Commissioners of Garfield County, 161 Okla. 300, 18 P. (2d) 888, Justice Andrews held that a party dealing with county does so with notice of statutory limitations on its powers and powers of its agents.

In the case of Board of County Commissioners of Cleveland County v. Seawell, 3 Okla. 281, 41 P. 592, the Supreme Court of Oklahoma said:

"Article 6, ch. 24, Stat. 1890, which provides for a board of county commissioners, also makes provision for the time and place of the meeting of such board, how they shall transact business, and the record they shall keep of all transactions had on behalf of the county. Under such law the only way by which the county could be bound upon a contract was by action taken by the board while it was in session. And the evidence of what was done were the records kept by the board. Under this law a board of county commissioners could only act to bind the county while they were sitting as a board, and an agreement of one of the members, in the absence of the others, could not bind such county."

In the case of Jackson v. Board of Commissioners of Muskogee County, 133 Okla. 263, 271 P. 1041, the Supreme Court of Oklahoma said:

"The board of county commissioners is the lawfully constituted agency to contract for and bind the county within lawfully granted powers, and the members of the board of county commissioners do not act in their individual capacities, singularly or collectively, but as a duly assembled body, as a board of county commissioners in the way and manner provided by law."

To the same effect see Board of Commissioners of Tulsa County v. Tulsa Camera Record Company, 103 Okla. 35, 228 P. 1103.

In the case of Board of Commissioners of Garfield County v. Anderson, 167 Okla. 253, 29 P. (2d) 75, this court, speaking through Justice Riley, said:

"The statutes which provide for a board of county commissioners also provide for the time and place of the meeting of such board, how they shall transact business, and the record they shall keep of all transactions had on behalf of the county. Under this law, a board of county commissioners can only act so as to bind the county while they are sitting in session as a board. Individual action by members of the board does not bind the county. Board of County Com'rs v. Seawell, 3 Okla. 281, 41 P. 592; Butler v. Board of County Com'rs, 57 Okla. 748, 157 P. 912; Western Paint Co. v. Board of Com'rs of Garfield County, 161 Okla. 300, 18 P. (2d) 888; Board of County Com'rs of Hughes County v. Busey, 166 Okla. 25, 25 P. (2d) 1098."

The case of Western Paint & Chemical Co. v. Board of County Commissioners of Washington County, 171 Okla. 302, 42 P. (2d) 533, is one of the latest cases wherein this question is involved. Here, again, Justice Riley, speaking with the unanimous approval of the court, held that in order for a person to bind the county on a contract, the contract must be entered into while the commissioners are sitting as a board.

It will be seen from these decisions that from an early date in Oklahoma, this court has consistently held that all parties dealing with county commissioners must deal with them with full knowledge of the limitation of their authority. It has also been consistently held that in order for the contract to be binding upon the county, it must be made by the county commissioners while they are in session as such. The evidence of what is done by the county commissioners is the records kept by the board as required by law.

The plaintiff contends that the presumption is that the acts of officials are presumed to be correct. We agree with that statement of the law, but here the records affirmatively disclose that no action was taken by the board of county commissioners on the day the contracts are dated, and in addition to that all of the county commissioners testify positively that the contracts were not entered into by the board while in session; two of them testifying that the contracts were signed in Oklahoma City.

In this case the court made a general finding for the defendant, and while we are unable to state on what ground the court denied the plaintiff relief, the question as to the time and place of signing the contracts was a vital issue about which considerable testimony was introduced. The trial court evidently found from the evidence that the contracts were not entered into by the board of county commissioners in regular session, and in their regular place of business, but were made at some other place. There is ample evidence in the record to sustain this finding, and this being true, the contracts were void and the plaintiff was not entitled to recover.

It seems a harsh rule that in order to protect the public from the acts of its agents a court must hold a county not liable even where it is admitted, as in this case, that the county received the lumber and had the use of it for the benefit of the public at large, yet, at the same time, the statutes herein cited have been passed for the bene-

fit of the public, and since everyone is required to take notice of these statutes it is not unreasonable to require a person dealing with a public agent to follow the statutes, and that if in contracting one goes beyond the limitations imposed by article 10, section 26, of the Constitution, he does so 'at his own peril. In re Town of Afton, 43 Okla. 720, 144 P. 184; City of Enid v. Warner-Quinlan Asphalt Co., 62 Okla. 139, 161 P. 1092.

The action of the trial court in entering a judgment for the defendant is fully sustained by the evidence. The judgment is, therefore, affirmed.

The Supreme Court acknowledges the aid of Attorneys Hubert Ambrister, Chas. E. McPherren, and Calvin Jones in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Ambrister, and approved by Mr. McPherren and Mr. Jones, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.